# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

ERVIN E. "GENE" PADGETT, III                                           PLAINTIFF

VS.                                                 CIVIL ACTION NO. 1:09CV131-D-D

OKTIBBEHA EDUCATIONAL FOUNDATION,
INC., d/b/a STARKVILLE ACADEMY                                         DEFENDANT

## MEMORANDUM OPINION GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Presently before this Court is Defendant's Oktibbeha Educational Foundation, Inc., d/b/a Starkville Academy's ("Starkville Academy") Motion for Summary Judgment. After reviewing the motion, pleadings, rules, and authorities, the Court makes the following findings:

### A. *Factual and Procedural Background*

Plaintiff, Ervin E. "Gene" Padgett, III (hereinafter "Plaintiff"), a white male, began teaching math classes in 1984 and obtained a doctorate in mathematics in 1994. Plaintiff began teaching at Starkville Academy in 2002. Starkville Academy is a private academy which provides both elementary and high school classes. During the 2002-2003 school year, Plaintiff taught one calculus course at Starkville Academy. Plaintiff was only available to teach part-time due to the fact he was teaching part-time math courses at Mississippi State University, Mississippi University for Women and Mississippi State University-Meridian. In 2004, Plaintiff's wife Suzanne began teaching math full-time at Starkville Academy. In 2004, with all of his part-time teaching positions, Plaintiff taught 43 semester hours worth of courses during one term.

In 2006, Plaintiff retired from Mississippi State University and the military reserves and inquired with the then headmaster, Mr. Henderson, about becoming a full-time teacher at Starkville Academy. Throughout Plaintiff's employment with Starkville Academy, he continued to be employed part-time. During the 2006-2007 school year, Plaintiff was selected to be on the faculty council by the other teachers. Plaintiff testified in his deposition that as a member of the faculty council, other teachers would bring their complaints to him to discuss, usually about female students and the dress code, and these discussions usually occurred during lunch hour while he was eating. Plaintiff was also named head of the mathematics department in 2007. Despite the fact Plaintiff requested Starkville Academy make him a full-time math teacher in 2007 and it did not, Brenda O'Bannon was hired as a full-time math teacher. Plaintiff failed to present any evidence as to what Ms. O'Bannon was hired to teach versus what Plaintiff taught. In addition, Plaintiff never submitted an application to work full-time but merely made an oral request to the then head master.

During the 2007-2008 school year, Plaintiff was having problems with a student and around February 2008, Plaintiff turned the student in for cheating and the student was suspended for three days.

On May 14 and 15, 2008, after the school year had ended, two teachers, Elizabeth Stewart and Sarah Hodgins, submitted letters accusing Plaintiff of sexual harassment. Plaintiff pointed out that Elizabeth Stewart ceased working for Starkville Academy in 2007 and the alleged sexual harassment she refers to happened in 2006. There is deposition testimony that there were informal complaints made during 2006 but no formal complaints were filed until 2008. Elizabeth Stewart's letter stated that Plaintiff had told the female teachers at lunch that he

could see up the cheerleaders' skirts in his class, referencing female students as the object of his sweet tooth, and referring to female students as a 10.

Hodgins complained about Plaintiff's use of the term "10," saying that he had a sweet tooth in reference to female students, and discussing "sweat dripping down the legs of cheerleaders." Hodgins also accused Plaintiff of saying that "she is not a high school freshman, she's a college freshman." Plaintiff also pointed out that the alleged sexual harassment that Hodgins complained of happened nearly two years earlier.

Starkville Academy's written sexual harassment policy defines sexual harassment as an "inappropriate verbal, written or physical contact of a sexual nature . . . [that] has the effect of creating an intimidating, hostile or offensive work or learning environment."

Coach Glenn Schmidt investigated the allegations made against Plaintiff. During the investigation, Plaintiff explained the context of the statement regarding sweaty cheerleaders, claiming that a teacher named Ms. Huber complained to Plaintiff about a certain student who always wore thongs and low rider jeans. According to Plaintiff, he told Ms. Huber that she needed to report any dress code violations to Mr. Henderson, the head of the school at the time, regarding the dress code issues. As for the sweet tooth comment, Plaintiff explained that he was merely referring to the fact that he had a root canal in 2006 and was in no way referencing female students in referring to his sweet tooth. Plaintiff explained the use of "10" as his generic compliment to anybody, male or female, old or young, skinny or fat. Suzanne Padgett, Plaintiff's wife testified, ". . . he did it to the guys, did it to the girls, he did it to the teachers, he did it to the custodians, he did it to the cafeteria workers." Plaintiff explained the college freshman comment by stating he was referring to an incident where a seventh grade girl had

bragged that she was going to seduce and have sex with a high school male, and after she was successful, the high school male was arrested, while the female became a hero at the school.

Plaintiff's final attempt to excuse his comments was to turn the tables around and claim that Hodgins stated at the lunch table that the male athletes should not be wearing wind suits because it left nothing to the imagination. Plaintiff also submits that the student he turned in and Hodgins were close and the only reason Hodgins wrote a letter accusing Plaintiff of sexual harassment was to get Plaintiff back for the student. Plaintiff also submitted that Hodgins and Stewart were close friends and conspired together in filing the complaints.

As part of Coach Schmidt's investigation, several students and teachers were interviewed. On May 22, 2008, after an investigation, Plaintiff was informed he was guilty of sexual harassment. Plaintiff appealed the guilty decision to the Review Committee. On June 12, 2008, the Review Committee upheld the decision and recommended Plaintiff's employment be terminated. Plaintiff appealed the decision to the new Head of School, Mr. Eiland. Mr. Eiland affirmed the decision and on July 17, 2008, Plaintiff appealed to the School Board of Trustees. Plaintiff was given a hearing and allowed to address the Board. After hearing Plaintiff's arguments, the Board upheld the previous decision that Plaintiff had committed sexual harassment and on July 23, 2008, terminated Plaintiff's employment with Starkville Academy. After his termination, Plaintiff was replaced by a female teacher.

On September 3, 2008, Padgett filed his EEOC claim alleging sex discrimination claiming he had never made any sexual comments and female teachers had made numerous sexual comments and were never disciplined. Plaintiff received a right to sue letter and on May 18, 2009, Plaintiff filed his Complaint against Starkville Academy alleging sex discrimination.

Defendant timely filed its Answer and Defenses on June 30, 2009, in which it denied all liability for Plaintiff's claims. As further discussed herein, the Court finds that Plaintiff has presented no evidence of any genuine issue of material fact as to any of his claims.

*B. Summary Judgment Standard*

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S. Ct. 2548. Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden then shifts to the non-movant to "go beyond the pleadings and by...affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324; *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). That burden is not discharged by "mere allegations or denials." Fed. R. Civ. P. 56(e). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of*

*Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

C. *Discussion*

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms conditions, or privileges of employment, because of such individual's race, color, religion, sex . . . ." 42 U.S.C. §2000e-2(a)(1)(2006).

First, the Plaintiff must establish a *prima facie* case of racial discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a *prima facie* case, Plaintiff must establish each of the following elements:

1. That he belongs to a protected class;
2. That he was qualified for the position he sought;
3. That he suffered an adverse employment decision; and
4. That the position was filled by someone outside the protected class.

*DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007)(*citing Manning v. Chevron Chem Co., LLC*, 332 f.3d 874, 881 (5th Cir. 2003)); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Once a *prima facie* case is established, the burden then shifts to the defendant to articulate "a legitimate, nondiscriminatory reason" for its employment action. *DeCorte*, 497 F.3d at 437. If the employer meets this burden, the plaintiff bears the final burden of proving that the employer's proffered reason is a pretext for discrimination-either through evidence of disparate treatment or by showing that the employer's explanation is false or unworthy of credence. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

There is no material dispute regarding the *McDonnell Douglas* elements: Plaintiff is male, he is qualified for the position, his teaching contract was not renewed and the position was filled by a female. Therefore, Plaintiff has established a *prima facie* case.

A *prima facie* case having been established, the burden now shifts to Defendant to articulate a legitimate, non-discriminatory reason for its employment action. Plaintiff was accused of sexual harassment by two teachers. Defendant investigated those charges by interviewing three teachers, six students and Plaintiff. At the conclusion of the investigation, Plaintiff was found to have committed sexual harassment. Based on being found guilty of sexual harassment in violation of school policy, Defendant decided to not renew Plaintiff's contract. Non-renewal of an employment contract due to the employee's violation of a school policy prohibiting activities and comments which constitute sexual harassment is a legitimate non-discriminatory reason. The documents and records currently before the Court do not contain any evidence to contradict Defendant's proffered reason. Therefore, the Court finds that Defendant had a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

Therefore, the burden is finally shifted back to the Plaintiff to prove that the Defendant's proffered reason is a pretext for discrimination by presenting evidence of disparate treatment or by showing that the employer's explanation is false or unworthy of credence. The crux of Plaintiff's argument is that Hodgins filed the sexual harassment complaint to retaliate against Plaintiff for reporting a student and that Hodgins and O'Bannon conspired together out of jealousy and as a way to further O'Bannon's career at the school.

Plaintiff is attempting to try the sexual harassment complaints before this Court. Regardless of whether Plaintiff's explanations and denials are credible, they are simply irrelevant. Under *Waggoner v. City of Garland*, 987 F.2d 1160 (5th Cir. 1993), a case similar to

the case *sub judice*, the Fifth Circuit found the plaintiff's summary judgment evidence regarding his innocence of the underlying sexual harassment charge was immaterial. Instead, the Fifth Circuit stated that the key issue is whether the City of Garland honestly believed he had committed sexual harassment:

> To the extent that [Plaintiff's] summary judgment evidence relates to his innocence of the sexual harassment charge, it is irrelevant. He must, instead, produce evidence that [the defendant] did not in good faith believe the allegations, but relied on them in a bad faith pretext to discriminate against him . . .

*Waggoner*, 987 F.2d 1166.

In *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, (5th Cir. 2010), another factually similar case, the Fifth Circuit found that plaintiff's self-serving statements that he did not commit sexual harassment were insufficient to survive summary judgment because they did not create a triable issue of fact as to whether Cal-Western fired him because of his age. The Fifth Circuit held that when an employer's reason for discharging an employee is based upon a complaint made by another employee, "the issue is not the truth or falsity of the allegation, but 'whether the employer reasonably believed the employee's allegation and acted on it in good faith.'" *Cal-Western*, 602 F.3d at 379 (quoting *Waggoner*, 987 F.2d 1165). Cal-Western, much like Defendant in the case *sub judice,* was faced with considerable evidence that the plaintiff violated the company's sexual harassment policy. The evidence included statements made by fellow employees, an internal investigation conducted by Cal-Western and an external investigation, which all substantiated the sexual harassment claims. Jackson failed to present evidence as to how or why Cal-Western's reliance upon the evidence against him was in bad faith. The Fifth Circuit concluded that the plaintiff's own conclusory assertions, without

evidence to suggest that Cal-Western's reliance on the results of the two investigations was unreasonable or in bad faith, were irrelevant. *Waggoner*, 987 F.2d 1166.

Much like the plaintiff in Cal-Western, Plaintiff in the case *sub judice* relies upon his own assertions and belief that he is innocent of sexual harassment. Plaintiff submitted affidavits stating they were not offended by his comments. However, as stated earlier, the question here is not whether Plaintiff, his wife, other teachers, or even the Court would have reached a different conclusion as to whether Plaintiff was guilty of sexual harassment but did Starkville Academy believe, in good faith, that Plaintiff violated the school's sexual harassment policy. In *EEOC v. La. Office of Cmty Servs.*, 47 F.3d 1438, (5th Cir. 1995), the Fifth Circuit held that employment discrimination laws are "'not intended to be a vehicle for judicial second-guessing of employment decisions nor...to transform the courts into personnel managers.'" *La. Office of Cmty Servs.*, 47 F.3d at 1448 (internal quotation omitted).

Plaintiff has presented no evidence to dispute whether Starkville Academy's decision-makers honestly believed Plaintiff had violated the sexual harassment policy. The record is void of any evidence that suggests Starkville Academy failed to take the sexual harassment charges against Plaintiff seriously or that the school failed to properly investigate the charges against him thoroughly. Starkville Academy's Complaint Manager interviewed students, teachers and Plaintiff during the investigation and issued a written report supporting her conclusion that Plaintiff had violated the school's sexual harassment policy. Plaintiff was allowed to appeal the Complaint Manager's decision that he had violated the policy. In fact, Plaintiff appealed first to a three-member Complaint Review Committee, then the Head of School, and finally to the Board of Trustees. At every level of the appeals process, the Complaint Manager's finding that Plaintiff violated the school policy was upheld. While Plaintiff may disagree with the

conclusions reached, he has failed to presented evidence in accordance with *Waggoner* that the investigation and subsequent appeals were not conducted in good faith or that the Board of Trustees did not act in good faith in relying upon the finding that Plaintiff violated the sexual harassment policy.

Though Plaintiff submitted affidavits to support his claim that he did not commit sexual harassment, Plaintiff points to absolutely no evidence that any of the parties involved discriminated against Plaintiff because of his gender. The Court, much like the *Jackson* court, is of the opinion that Plaintiff's self-serving comments that he did not commit sexual harassment is not sufficient to create a triable issue of fact and survive summary judgment. Absent proof that the Starkville Academy representatives who were involved in the sexual harassment investigation acted in bad faith and used the charges as a pretext to discriminate against Plaintiff because of his gender, Plaintiff's belief that he was innocent of the sexual harassment is irrelevant.

In what the Court perceives as a shallow attempt to prove disparate treatment, Plaintiff states that female teachers made comments about male students but were never punished or fired. Again, Plaintiff failed to provide any evidence besides his conclusory allegations. There is no evidence before the Court that any sexual harassment claims have ever been filed against female teachers. Therefore, there is nothing in the record that shows Plaintiff was treated differently than his female co-workers. Therefore, the Court finds that Plaintiff did not carry his burden of proof of disparate treatment.

The Court is of the opinion that Plaintiff's denial of any sexual harassment alone is insufficient to establish a genuine issue of material fact as to pretext. Without more, the Court cannot conclude that there is a triable issue of fact as to whether Starkville Academy

discriminated against Plaintiff based on his gender. There is, however, supporting evidence that Plaintiff's contract was not renewed because he was found to have violated Starkville Academy's sexual harassment policy. Therefore, Plaintiff has failed entirely to carry his burden to show that Starkville Academy's reliance on the finding that Plaintiff violated the school's sexual harassment policy was in bad faith and mere pretext for gender discrimination or that he was treated differently than female teachers.

### D. Conclusion

In sum, the Court finds there are no genuine issues of material fact as to Plaintiff's claims and Defendant is entitled to judgment as a matter of law on all claims. Defendant's motion for summary judgment will be granted.

A separate order in accordance with this opinion shall issue this day.

This the 16th day of August, 2010.

/s/ Glen H. Davidson
Senior Judge